**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

INTERNATIONAL LONGSHOREMEN'S
ASSOCIATION,

   Plaintiff,

v.                                                             Civil Action No.: 2:26cv366

VIRGINIA PORT AUTHORITY, *et al.,*

   Defendants.

**DEFENDANTS VIRGINIA PORT AUTHORITY'S AND SARAH MCCOY'S
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R.
CIV. P. 12(b)(1) AND 12(b)(6)**

Despite there being no change in circumstances since its original lawsuit was dismissed in February 2026,[1] the ILA brings this lawsuit against the VPA, and VPA's current CEO and Executive Director, Sarah McCoy, related to rail-mounted gantry cranes at the Port of Virginia.[2] Although the ILA adds VIT as a party to this new action, the factual and legal deficiencies remain. This new action is yet another attempt to improperly involve this Court in what the ILA has already called a "dispute between the private entity, VIT, and its labor union, the ILA" related to the manning of the cranes at terminals within the Port of Virginia. (*Int'l Longshoremen's Ass'n v. Virginia Port Auth.*, No. 2:25-cv-523 (E.D. Va. Feb. 26, 2026), Dkt. No. 36, Hearing Tr., at 11–12.)  This new Complaint (the "Complaint") raises no new facts upon which the ILA can state a

---

[1] S*ee Int'l Longshoremen's Ass'n v. Virginia Port Auth.*, No. 2:25-cv-523 (E.D. Va. Feb. 26, 2026), Dkt. No. 41, which is attached hereto as Exhibit 1.

[2] For ease, references to the parties in this case will be as follows: the International Longshoremen's Association ("ILA"), the Virginia Port Authority ("VPA"), VPA's current CEO and Executive Director, Sarah McCoy ("McCoy"), and Virginia International Terminals, LLC ("VIT").

1

claim or establish subject matter jurisdiction on their speculative and abstract claims of future harm. Having now twice failed to state a cause of action, the ILA's Complaint should be dismissed with prejudice.

## BACKGROUND

The ILA filed its first suit on this matter on August 26, 2025, alleging that VPA had "newly" purchased and planned to use rail-mounted gantry cranes ("RMGs") without prior bargaining with VIT, thereby causing VIT to violate its labor agreement with the ILA—an agreement to which VPA is not a party. (Complaint, *Int'l Longshoremen's Ass'n v. Virginia Port Auth.*, No. 2:25-cv-523 (E.D. Va. Feb. 26, 2026), Dkt. No. 1, which is attached hereto as Exhibit 2.) According to the ILA, VPA was preempted from purchasing or using those cranes because doing so would interfere with the contract between the ILA and VIT. (*Id.*) VPA and its former CEO and Executive Director, Stephen Edwards, the defendants in that case, filed a Motion to Dismiss for (1) lack of subject matter jurisdiction on the bases that (a) VPA and Edwards had sovereign immunity and (b) there was no subject matter jurisdiction; (2) failure to state a claim for preemption under the National Labor Relations Act ("NLRA") or for injunctive relief; and (3) failure to join VIT, a necessary party. (Defendants' Memorandum in Support of Motion to Dismiss, *Int'l Longshoremen's Ass'n*, No. 2:25-cv-523 (E.D. Va. Feb. 26, 2026), Dkt. No. 14.)

This Court granted the Motion to Dismiss, concluding that declaratory and injunctive relief would not provide the ILA with redress and the ILA's claims were not ripe. (Ex. 1, *Int'l Longshoremen's Ass'n v. Virginia Port Auth.*, No. 2:25-cv-523 (E.D. Va. Feb. 26, 2026), Dkt. No. 41.) Specifically, this Court concluded that the declaratory relief sought by the ILA would not provide redress because (1) any declaration by the Court would not bind VIT, the party with whom the ILA contracted, and (2) the ILA failed to show how it would use the declaration in a

2

future lawsuit. (*Id.* at 12-18.) On injunctive relief, this Court held that "[a]ny injury suffered by virtue of the RMG cranes installation without prior notice to ILA, has already transpired," and "ILA's pleading of one prior wrong, without more," is "not . . . good reason to think that other new technologies will be purchased without notice to ILA." (*Id.* at 15.) Similarly, this Court found that the ILA's claims were not ripe "until the defendants take further action that interferes with the contractual relationship, or at least until ILA can plead facts to show future injury is not 'wholly speculative.'" (*Id.* at 16-17.) Finally, this Court declined to exercise jurisdiction under the Declaratory Judgment Act. (*Id.* at 19.) On these bases, the Court dismissed the case, without prejudice.

Now, the ILA has filed this Complaint on substantially the same factual allegations that this Court recently dismissed. The only real differences between this Complaint and the former are that the ILA has added VIT as a defendant; substituted the former Chief Executive Officer and Executive Director of the VPA, Stephen Edwards, for his successor, Sarah McCoy; and attempted to add claims for tortious interference against VPA and McCoy. (Dkt. No. 1, ¶¶ 3, 4, 102–13.) The ILA also added an allegation that new cranes will be delivered to the Port in the future but neglected to mention that all such cranes were part of the same 2023 purchase as the RMGs at issue in the prior lawsuit as is evident by the press release cited by the ILA in its Complaint. (*Id.* ¶ 77; Exhibit 3 (a copy of the 2023 press release cited by the ILA in Paragraph 77 of the Complaint).) The ILA has paired this omission with vague, speculative allegations that VPA may someday expand the Port and inevitably have to replace or upgrade its equipment and technology at some unknown point in the future. (*Id.* ¶¶ 80–81.) None of these edits alter the analysis that drove the Court's decision to dismiss this case the first time, and so the Court should dismiss this Complaint, with prejudice, for the same reasons.

**LEGAL STANDARDS**

I.   Rule 12(b)(1) of the Federal Rules of Civil Procedure

A motion to dismiss pursuant to Rule 12(b)(1) challenges the court's subject matter jurisdiction over a case. Fed. R. Civ. P. 12(b)(1). A challenge under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'" *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quoting *Adams v. Bain*, 697 F. 2d 1213, 1219 (4th Cir. 2009)). A plaintiff carries the burden of establishing subject matter jurisdiction. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).

II.   Rule 12(b)(6) of the Federal Rules of Civil Procedure

"A motion [to dismiss] filed under Rule 12(b)(6) challenges the legal sufficiency of the complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). If the facts alleged in the complaint, taken as true, fail to state a claim upon which relief can be granted, the Court should dismiss the complaint. *See id*. The United States Supreme Court has explained that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A 12(b)(6) motion should be granted unless an adequately stated claim is 'supported by showing any set of facts consistent with the allegations in the complaint.'" *Honua Securities Corp., Inc. v. SMI Hyundai Corp.*, No. 1:10cv785, 2010 WL 11565898, at *3 (E.D. Va. Oct. 21, 2010) (quoting *Twombly*, 550 U.S. at 561). "'A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Iqbal*, 129 S.

4

Ct. at 1949; *Twombly*, 550 U.S. at 555). "A complaint is also insufficient if it relies upon 'naked assertions devoid of further factual enhancement.'" *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949).

## ARGUMENT

In bringing its new action, the ILA doubles down on the same 2023 purchase of cranes that this Court determined was insufficient to support a cause of action in the original suit. There is no allegation that VPA has purchased any new cranes or equipment since the execution of the Master Contract or that VPA has any imminent plans to purchase any new cranes or equipment, nor could there be because no such actions have been taken by the VPA. The facts and circumstances remain the same as at the time that the original lawsuit was dismissed: VPA and McCoy are not parties to the Master Contract, the cranes are not in use for cargo operations nor are they alleged to be, and the ILA and VIT are in ongoing labor negotiations related to the manning of the RMGs. (VIT's Memo. in Support of Mot. to Dismiss, Dkt. No. 18, at 1 ("This lawsuit stems from an ongoing collective bargaining dispute between the ILA and VIT . . . .").) There is nothing for this Court to redress, the clams are not ripe, and the matter should be dismissed with prejudice.

I.   Under Rule 12(b)(1), this Court lacks subject matter jurisdiction to hear this case.

As with the prior lawsuit, this Court lacks subject matter jurisdiction because there is nothing for this Court to redress at this time. Even if this Court believes it might have jurisdiction, it should decline to hear this matter under the Declaratory Judgment Act due to jurisdictional concerns.

**A. The ILA's requests for declaratory and injunctive relief are not redressable by this Court.[3]**

As in the prior lawsuit, there is no claim for this Court to redress. "Article III of the Constitution limits the jurisdiction of federal courts to resolving 'Cases' and 'Controversies.'"

---

[3] As discussed *infra*, the ILA's Complaint only seeks injunctive and declaratory relief even as it pertains to its tortious interference claims.

*Penegar v. Liberty Mut. Ins. Co.*, 115 F.4th 294, 299 (2024) (quoting U.S. Const. Art. III § 2). "For a case or controversy to exist, 'the plaintiff must have a "personal stake" in the case –in other words, standing.'" *Id.* (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *Raines v. Byrd*, 521 U.S. 811, 819 (1997)). To show standing, a plaintiff must show the following: "'(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury is likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief.'" *Id.* (quoting *TransUnion*, 594 U.S. at 423). Here, the ILA makes no allegation of actual harm nor does it present a redressable claim to the Court.

"To show redressability, 'it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."'" *Lowe v. Brink*, 615 F. Supp. 3d 417, 423 (E.D. Va. 2022) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). "In general, plaintiffs ask courts to redress two broad types of injuries." *Wells v. Johnson*, 150 F.4th 289, 299 (4th Cir. 2025). A plaintiff can allege that they were wronged in the past and ask the court to provide a remedy for this previous wrong to make them whole, which allows "the plaintiff [to] get only backward-looking relief, like damages." *Id.* at 300. Alternatively, "a plaintiff can complain that something might befall him in the future, or might be happening right now." *Id.* at 299. For this second category, "[w]hen an injury has yet to occur, but a plaintiff offers good reason to think it will soon (or is occurring, and a plaintiff offers good reason to think it will continue) he can seek redress prospectively through an injunction." *Id.* at 300. It is this forward-looking relief that the ILA appears to seek both in the form of a declaratory judgment and an injunction.

      1.  *The declaratory judgment sought does not satisfy Article III standing.*

As this Court noted in its opinion dismissing the original Complaint, a plaintiff "can also seek redress through the issuance of a declaratory judgment." (Ex. 1, at 11, *Int'l Longshoremen's*

6

*Ass'n v. Virginia Port Auth.*, No. 2:25-cv-523 (E.D. Va. Feb. 26, 2026), Dkt. No. 41.) Even so, a declaratory judgment must satisfy Article III's case or controversy requirement. *California v. Texas*, 593 U.S. 659, 672 (2021). For a declaratory judgment to provide redress in satisfaction of Article III's standing requirement, "a plaintiff must show both that future litigation is likely to happen (at least absent the declaration sought) and that the declaration's preclusive effect will likely help [them] in that litigation." *Wells*, 150 F.4th at 302. Neither element is met here.

The ILA asks the Court to "[d]eclar[e] that Defendants' attempt to frustrate and interfere with the collective bargaining process and administration of the Master Contract is preempted by federal labor law." (Dkt. No. 1, at 23.) However, as with its first Complaint, "ILA has not demonstrated how it would use the declaration, either offensively or defensively, in a future lawsuit." (Ex. 1, at 13–14, *Int'l Longshoremen's Ass'n v. Virginia Port Auth.*, No. 2:25-cv-523 (E.D. Va. Feb. 26, 2026), Dkt. No. 41.) Once again, "ILA has not alleged that VPA or [McCoy] will sue ILA, or provided reason to think such a lawsuit is imminent, such that ILA would then use the declaration as a defensive shield." (*Id.*) Nor has the ILA "alleged 'concrete plans' to file a lawsuit against the defendants moving forward, nor offered specifics of what wrongful conduct it believes they will engage in." (*Id.*) "[S]ome day intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the actual or imminent injury that our cases require." (*Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992))).

The new allegations offered by the ILA fall well short of the requisite specifics. The ILA alleges that VPA "plans to acquire, install, and implement at least eighteen (18) more semi-automated stacking cranes in 2027," but neglects to mention that its source for that allegation—a press release from 2023—reflects that VPA purchased those cranes *at the same time* as the cranes

that were the sole subject of the first Complaint. (*See* Dkt. No. 1, ¶ 77; see also Ex. 3, copy of the document available at the link cited by the ILA.) The ILA's suggestion that VPA has purchased new cranes since the original suit is inaccurate, as the very link cited is from 2023, when VPA purchased the cranes in the original Complaint. (*See id.*) Accordingly, the ILA has not presented a new fact and instead relies on the same single purchase which had already happened at the time the first lawsuit was dismissed.

The current Complaint raises new allegations attempting to state a claim for future harm, but they too fall short as they are highly speculative and not at all specific. The ILA's claim that VPA "envisions continued expansion of the Port . . . in the coming *decades*" (Dkt. No. 1, ¶ 81 (emphasis added)) does not translate to VPA purchasing new equipment subject to the Master Contract, nor does the ILA allege (1) that the VPA has specifically contemplated, negotiated for, or contracted for additional equipment or (2) a timeframe for the same. Similarly, the ILA's claim that "the Port of Virginia will regularly upgrade equipment and technology in the *coming years*" fails to allege a concrete plan, negotiations, or contract to purchase equipment subject to and in violation of the Master Contract or a timeframe for the same. (*See id.* ¶ 81 (emphasis added))

These allegations are precisely the sort of "some day intentions" without "any specification of *when* the some day will be" that this Court and the Supreme Court have held are not redressable. (*See* Ex. 1, at 13-14, *Int'l Longshoremen's Ass'n v. Virginia Port Auth.*, No. 2:25-cv-523 (E.D. Va. Feb. 26, 2026), Dkt. No. 41); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992). Accordingly, as with the original Complaint, "the declaration the ILA seeks would not provide redress for any present injury" and should be dismissed. (*Id.*)

2. *Injunctive relief too fails for lack of standing.*

The ILA asks the Court to "[p]ermanently enjoin[] Defendants from any interference with

8

collective bargaining or the administration of the Master Contract . . . ." (Dkt. No. 1, at 23.) Once again, and "[f]or the same reasons that declaratory relief would not provide ILA with redress for any future or ongoing injuries," the ILA has failed to show how an injunction would redress any wrong or help it in a tangible way. (Ex. 1, at 14 –15, *Int'l Longshoremen's Ass'n v. Virginia Port Auth.*, No. 2:25-cv-523 (E.D. Va. Feb. 26, 2026), Dkt. No. 41.) The purchase of all the cranes had already transpired at the time the ILA filed its first Complaint. (*See* Dkt. No. 1, ¶ 77; Ex. 3.) Further, for the reasons stated above, "ILA has not offered 'good reason to think' that other new technologies will be purchased without notice to ILA" because it can point to only one (past) purchase of cranes and argues that because the Port plans to expand at some point in the future and will inevitably have to replace old equipment, it will eventually end up buying new cranes. (*Id.* at 15.) Yet, again, "ILA has not claimed that VPA or VIT have plans to purchase more types of new technology in violation of the terms of the Master Contract"; instead, the ILA has effectively alleged that in the future, VPA *might* have plans. (*Id.*) "Without more definite allegations, . . . ILA has not met its burden to show imminent future injury, warranting injunctive relief." (*Id.*)

Because the ILA has failed to allege specific or concrete plans for the VPA to somehow cause a violation of the Master Contract (a contract to which they are not even a party) or show how it would use a declaration in a future lawsuit, declaratory or injunctive relief would not redress the injuries that the ILA alleges. Therefore, the ILA does not have Article III standing to bring this suit and its dismissal is once again warranted, but this time with prejudice, as it has now had two chances to bring a proper action before the Court and failed.

### B. The ILA's claims are still not ripe.

For the same reasons the ILA's claims are still not redressable, they are not ripe, either. "A claim should be dismissed as unripe if the plaintiff has not yet suffered injury and any future

9

impact remains wholly speculative." *Doe v. Virginia Dept. of State Police*, 713 F.3d 745, 758 (4th Cir. 2013) (citations and quotation marks omitted). As this Court previously found, because the ILA seeks "relief in anticipation that VPA will continue to interfere with VIT and ILA's contractual relationship moving forward and not relief for its prior injury," the ILA's claim "is not ripe until the defendants take further action that interferes with the contractual relationship, or at least until ILA can plead facts to show future injury is not 'wholly speculative.'" (Ex. 1, at 16–17, *Int'l Longshoremen's Ass'n v. Virginia Port Auth.*, No. 2:25-cv-523 (E.D. Va. Feb. 26, 2026), Dkt. No. 41.) Defendants have taken no such action, and as established in Section I.A. *supra*, the new facts and causes of action pled by the ILA are wholly speculative. The ILA's own allegations underscore the speculative and unripe nature of their claims when they state that the most imminent danger is that "the ILA is one (1) year away from having another phase of job-reducing automated technology implemented without the opportunity to bargain for workforce protections." (Dkt. No. 1, ¶ 92.) Any anticipated future injury is contingent on future action or inaction by the ILA and VIT in their ongoing labor negotiations. These future uncertainties are not ripe for decision. Accordingly, the ILA's claims are not ripe, and dismissal is therefore warranted for lack of jurisdiction.

> **C. If this Court believes it might have jurisdiction, it should exercise its discretion to decline to hear this case under the Declaratory Judgment Act.**

This case is not justiciable under Article III, but even if it was, the Court should decline to exercise its jurisdiction. "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). Declaratory judgment actions are unique in this regard. *Id.* at 286–87 ("The statute's textual commitment to discretion, and the breadth of leeway we have always understood it to suggest, distinguish the declaratory judgment

10

context from other areas of the law in which concepts of discretion surface.").

"[C]ourts should exercise their discretionary jurisdiction with caution when doing so would raise serious questions about Article III jurisdiction." *Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 202 (4th Cir. 2019). When there are legitimate questions raised about the Court's jurisdiction, declining to hear the case under the Declaratory Judgment Act is proper. *See, e.g.*, *Artful Color, Inc. v. Hale*, 928 F. Supp. 2d 859, 863 (E.D.N.C. 2013) (exercising discretion not to consider a declaratory judgment when "personal jurisdiction over defendant is unclear."); *Phoenix Ins. Co. v. Kellner*, No. 11-1085, 2012 WL 266470, at *3–4 (W.D. Pa. Jan. 30, 2012) ("Another factor weighing in favor of declining jurisdiction, is that there are dubious constitutional bases for the exercise of jurisdiction in this case . . . [T]he court's significant reservations regarding the ripeness of issues presented is an additional factor counseling in favor of declining jurisdiction as a discretionary matter.").

Given the speculative nature of the claims, the conclusory allegations in the Complaint, and this Court's previous decision on substantially the same Complaint, exercising jurisdiction here would serve no useful purpose and would only be improperly advising on a "'hypothetical state of facts.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240–41 (1937)). Therefore, the Court also has grounds to dismiss this claim pursuant to its discretion under the Declaratory Judgment Act.

   II.  <u>Under Rule 12(b)(6), the Complaint should be dismissed in full because it fails to state a claim against the VPA or McCoy.</u>

   **A.  The ILA makes no factual allegations against McCoy.**

As a threshold matter, the Complaint lacks any allegations related to McCoy specifically. Although every claim brought against the VPA is also brought against McCoy, in her official capacity as CEO and Executive Director of the VPA, there are no specific allegations related to

11

McCoy's actions or inactions. (*See generally* Dkt. No. 1.) Indeed, the operative Complaint mentions McCoy only once. (*See id.* at ¶ 3.) This is in contrast to the inclusion of some specific allegations as to Edwards in both the prior and current Complaints. Paragraph 3 asserts that even though Stephen Edwards, the VPA's prior CEO and Executive Director, was "the impetus behind the events leading to the ILA's claims" McCoy is being sued "because the ILA's claims and requests for relief apply to all individuals who hold this title." (*Id.*) Despite seeking prospective relief, there are no allegations in the Complaint that McCoy has in any way continued with Edwards's alleged behavior of interference in the enforcement of the Master Contract or engaged in any conduct that the ILA believes is actionable.[4] McCoy should be summarily dismissed from this suit for this reason alone.

### B. The ILA's declaratory judgment action under a theory of preemption is not a proper claim.

The ILA tries to veil its new Complaint as anything other than a breach of contract action against VIT, the only party in privity with the ILA, because it knows it cannot succeed on such claim against VPA or even bring such a claim in this Court. To so do, the ILA claims that VPA's 2023 purchase of the RMG cranes implicates language from the 2025 Master Contract and creates an issue that is somehow preempted by federal law. It does not. This is not a preemption case.

1. *There is no mechanism under the NLRA for the ILA to sue VPA or McCoy as alleged.*

At the outset, the ILA does not make clear under what authority it brings Count I of the Complaint. The ILA references "preemption," but it does not identify any authority for bringing such a claim against VPA or McCoy. At best, the ILA appears to suggest that VPA has violated the NLRA, but it sets forth no provision of the NLRA that VPA has purportedly violated, and it

---

[4] These arguments also relate to the sovereign immunity analysis related to state actors under *Ex parte Young*, which is argued in more detail herein.

cites no grounds for a private right of action to bring such an action in federal court. *See San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245 (1959) ("When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board."). Aside from the fact that the NLRA does not contain a private right of action, the NLRA does not address or establish liability for third parties who are not acting as a statutory employer or a labor union. Without allegations of a specific provision that VPA has supposedly violated or grounds for a private right of action to bring this matter in federal court, the ILA has failed to put Defendants on notice or state a claim, and all claims should be dismissed with prejudice.

Here, the ILA brings claims against the VPA and its director, McCoy, for allegedly interfering in a labor negotiation between ILA and VIT. It admits that the VPA is not an employer under the NLRA. (Dkt. No. 1, ¶ 23 ("VPA is not an 'employer' as that term is defined by the NLRA because it is an instrumentality of the Commonwealth of Virginia."), ¶ 24.) In fact, as a political subdivision, VPA *cannot* be an employer under the NLRA. 29 U.S.C. § 152(2) (excluding a state or political subdivision from the definition of "employer"); *Fenner v. Mayor & City Council of Baltimore*, No. DLB-21-2646, 2022 WL 2209064, *4–5 (D. Md. June 21, 2022). The VPA certainly is not a labor union, and McCoy is merely an official within the VPA, not an employer or labor union. (Dkt. No. 1, ¶ 3.) Third parties not directly involved in a labor dispute are not governed by the NLRA. *Fenner*, 2022 WL 2209064, at *4–5.

Without any authority cited by the ILA regarding the bases for its claims, the ILA fails to state a claim upon which relief can be granted. At the very least, particularly in light of the prior dismissal, the ILA needs to identify the mechanism or statute by which it brings this cause of action rather than a general reference to the NLRA. Without such an allegation in the Complaint,

13

Defendants are not given "fair notice of what the . . . claim is and the grounds upon which it rests" to respond. *See Walsh v. Eagle Landing Homeowners Ass'n*, No. 3:16cv559, 2017 WL 11571463, at *1 n.1 (E.D. Va. Nov. 3, 2017) (quoting *Twombly*, 550 U.S. at 555; *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Defendants therefore respectfully request that this Court dismiss the ILA's complaint with prejudice.

2. *Neither* Machinist *nor* Garmon *preemption apply.*

Even if the ILA had stated a basis for bringing a lawsuit against the VPA and McCoy on the basis of preemption alone, the ILA fails to state a claim that Va. Code 62.1-128, *et seq.*, is preempted by the NLRA pursuant to Article VI, Clause 2, of the Constitution of the United States (the "Supremacy Clause"). "Although the NLRA itself contains no express preemption provisions, the Supreme Court consistently has held that Congress implicitly mandated two types of preemption as necessary to implement federal labor policy." *Smithfield Foods, Inc. v. United Food & Comm. Workers Int'l Union*, 585 F. Supp. 2d 789, 812 (E.D. Va. 2008). "These well-established preemption doctrines have come to be known as '*Garmon* preemption' [(from *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959))] and '*Machinists* preemption'" [(from *Machinists v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132 (1976))]. *Id.* Neither doctrine justifies preemption of VPA's alleged action in this case.

*Garmon* preemption is "'intended to preclude state interference with the National Labor Relations Board's interpretation and active enforcement of the integrated scheme of regulation established by the NLRA.'" *Id.* (quoting *Golden State Transit Corp. v. Los Angeles*, 475 U.S. 608, 613 (1986)). "To this end, *Garmon* preemption forbids States from 'regulat[ing] activity that NLRA protects, prohibits, or arguably protects or prohibits.'" *Id.* (quoting *Wis. Dep't of Indus., Labor & Human Rels. v. Gould, Inc.*, 475 U.S. 282, 286 (1986)). "*Garmon* pre-emption involves

14

balancing the State's interest in controlling or remedying the effects of the conduct in question against the interference with the Board's ability to adjudicate controversies committed to it by the Act, and the risk that the State will sanction conduct that the Act protects." *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 748 n.26 (1985) (citing *Belknap, Inc. v. Hale*, 463 U.S. 491, 498–99 (1983)). "*Garmon* pre-emption accomplishes Congress' purpose of creating an administrative agency in charge of creating detailed rules to implement the Act, rather than having the Act enforced and interpreted by the state or federal courts." *Id.*

*Machinists* preemption "forbids both the NLRB and States from regulating conduct that Congress intended 'to be controlled by the free play of economic forces.'" *Smithfield Foods, Inc.*, 585 F. Supp. 2d at 812 (quoting *Machinists*, 427 U.S. at 140). "In *Machinists*, the Supreme Court held that Wisconsin Employment Relations Commission could not designate as an unfair labor practice a concerted refusal by a union and its members to work overtime because Congress did not intend for such activity to be regulated by the States." *Id.* The Supreme Court held that there was "'simply no question that the [NLRA]'s processes would be frustrated in the instant case were the State's [action] permitted.'" *Id.* (quoting *Machinists*, 427 U.S. at 148). The Court further found that it was "'clear beyond question that Wisconsin [entered] into the substantive aspects of the bargaining process to the extent that Congress has not countenanced.'" *Id.* (quoting *Machinists*, 427 U.S. at 148). Pursuant to this analysis, "*Machinists* preemption is based on the principle that it would frustrate Congress's intent to regulate economic pressure which was desirably left unregulated by the federal labor laws." *Id.*

When the Supreme Court states that the NLRA pre-empts state law, it means "that the NLRA prevents a State from regulating within a protected zone, whether it be a zone protected and reserved for market freedom, see *Machinists*, or for NLRB jurisdiction, see *Garmon*." *Bldg. &*

15

*Const. Trades Council of Metropolitan Dist. v. Associated Builders and Contractors of Mass./Rhode Island, Inc., et al.* (hereinafter, *Boston Harbor*), 507 U.S. 218, 226–27 (1993). "A State does not regulate, however, simply by acting within one of these protected areas." *Id.* at 227. Accordingly, the Supreme Court has consistently held that "the NLRA was intended to supplant state labor *regulation*, not all legitimate state activity that affects labor." *Id.* (emphasis in original).

In this case, the ILA cites neither form of preemption in support of its claims. Instead, it only states as follows:

> To the extent that the VPA Defendants and VIT are acting in a manner that circumvents VIT's contractual obligations and interferes with the ILA's collective bargaining rights, by forcing VIT to violate its obligations under the Master Contract, or in a manner that frustrates the Master Contract's grievance and dispute resolution procedures, the VPA Defendant's interpretation and application of Virginia law is preempted by the NLRA.

(Dkt. No. 1, ¶ 101.) The ILA then goes on to cite language from two cases without any analysis regarding how or why the quoted language is applicable in this case. (*See id.* ¶¶ 93–94.) In fact, the ILA takes quotes from these cases out of context when they have no relevance here. *See H.K. Porter Co. v. N.L.R.B.*, 397 U.S. 99, 107–09 (1970) (holding that the NLRB can require employers and employees to negotiate, but it cannot require either party to agree to terms); *Int'l Bhd. of Elec. Workers, Local 501 v. N.L.R.B.*, 341 U.S. 694 (1951) (analyzing the secondary boycott provision of the NLRA and the terms "induce or encourage" in the context of labor union picketing behavior). Neither case concerns alleged interference with a labor union and employer contract by a third party.

Even if the ILA had referenced a specific form of preemption, it does not allege facts to support a claim under either theory. On its face, the ILA's preemption claim cannot be based on *Garmon* preemption. As outlined above, *Garmon* preemption protects the National Labor Relations Board's ("NLRB") jurisdiction over NLRA matters by taking NLRA issues outside of

16

the realm of state and federal courts. The ILA does not contend that the subject issue can or should be pending before the NLRB. Rather, it has elected to file in this Court, and in fact could not file in front of the NLRB, as it acknowledges that VPA is not a private employer, but rather, a public instrumentality. (Dkt. No. 1, ¶ 2.) *Garmon* preemption therefore does not support the ILA's claim.

*Machinists* preemption is equally inapplicable. The ILA references two provisions that it claims are preempted by the NLRA. First, it cites to Va. Code § 62.1-132.3 which states:

> It shall be the duty of the Authority, on behalf of the Commonwealth, to foster and stimulate the commerce of the ports of the Commonwealth and related facilities by serving as the United states Eastern Seaboard gateway for the global import and export of freight throughout the world, to promote the shipment of freight through maritime and inland ports, to seek to secure necessary improvements of navigable tidal waters within the Commonwealth, and in general to perform any act or function that may be useful in developing, improving, or increasing the commerce, both foreign and domestic, of all maritime and inland ports of the Commonwealth and related facilities.

Second, the ILA cites to Va. Code § 62.1-132.18, which states, *inter alia*: "The Authority is authorized to acquire, construct, maintain, equip, and operate marine terminals, port facilities, wharves, docks, ships, piers, quays, elevators, compressors, refrigeration storage plants, warehouses, and other structures necessary for the convenient use of the same in the aid of commerce."

Contrary to the types of state regulation that are subject to *Machinists* preemption, these statutory provisions are not related to the collective bargaining process or labor relations; they simply authorize the VPA to acquire and maintain equipment for the Port of Virginia. These provisions do not contest, interfere with, or even relate to NLRA's control over labor regulation. *See Boston Harbor*, 507 U.S. at 227. Even if the ILA were somehow trying to allege a federal tortious interference with contract claim under the NLRA, that too would fail as the VPA and McCoy are non-signatories to the Master Contract. *See Int'l Union, United Mine Workers of Am. v.*

17

*Covenant Coal Corp.*, 977 F.2d 895, 899 (4th Cir. 1992) ("Because Covenant was not a party to any agreement with the Union, it cannot be sued under the jurisdiction established by section 301.")

The ILA cites no provision of the NLRA that preempts these statutory provisions, nor does it allege any support for a finding that the provisions are regulating "conduct that Congress intended to be unregulated." *See Metropolitan Life*, 471 U.S. at 749. Instead, the ILA attempts to shoehorn its request for relief into a purported preemption claim against a government entity without sufficiently stating a basis for its preemption claim or for any other private right of action. This failure comes even after the ILA has had a preview of Defendants' arguments in the previous lawsuit (*see Int'l Longshoremen's Ass'n*, No. 2:25-cv-523 (E.D. Va. Feb. 26, 2026), Dkt. No. 14), which suggests that the ILA cannot overcome its inability to show preemption is applicable.

Without explaining how or why the Virginia statutory provisions are preempted by the NLRA (or designating which part of the NLRA purportedly preempts the Virginia Code's statement of duties of VPA), the ILA fails to state a claim for preemption. Given that the ILA's claims for declaratory judgment and permanent injunction are based exclusively on a general claim of preemption, for which it has not and cannot state a claim under preemption precedent, the entirety of the Complaint should be dismissed with prejudice.

### C. The ILA fails to assert a claim for tortious interference with a business expectancy or tortious interference with contract.

The only truly new claims alleged in the Complaint are two separate counts for tortious interference with business expectancy and tortious interference with contract. (Dkt. No. 1, ¶¶ 102-13.) The facts alleged do not state a claim under the new counts either.

>    1. *The ILA has not alleged the intentional interference or damages required to sufficiently prove either claim.*

18

As for tortious interference with contract, the ILA would need to allege sufficient facts to establish:

> (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Chaves v. Johnson*, 230 Va. 112, 120 (1985) (citing *Calbom* v. *Knudtzon*, 65 Wash. 2d 157, 162-63, 396 P.2d 148, 151 (1964)); *Masco Contractor Services East, Inc. v. Beals*, 279 F. Supp. 2d 699, 709 (E.D. Va. 2003) (citing *Chaves*, 230 Va. at 120)). The ILA's claims fail for lack of sufficient facts related to elements three and four.

The ILA cannot satisfy the third prong of tortious interference with contract because its Complaint presupposes a breach of the Master Contract by VIT that has not happened and may never happen. As is clear from the ILA's own exhibit to its Complaint, the RMGs at issue were purchased in 2023, prior to the execution of the Master Contract in early 2025. (*See* Dkt. No. 1, ¶ 77; Ex. 3.)[5] A preexisting purchase by itself cannot be a breach of the subsequent Master Contract.

Even if a breach were alleged, which it is not, the ILA has not alleged any damages or sought monetary relief as is reflected on the Civil Cover Sheet to the Complaint. (*See* Dkt. No. 1-4 (listing only injunctive relief sought in the "Damages" section).) Even if the ILA's Complaint can be deemed to attempt to claim damages, the allegations are nothing more than speculative damages in the form of "inequitable bargaining power and reduced job opportunities, wages,

---

[5] The Court is allowed to rely on documents that have been made part of the pleadings such as the Plaintiff's exhibits to the Complaint. *Lee Pappas Body Shop, Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 3:20CV964-HEH, 2021 WL 3609296, at *6 (E.D. Va. Aug. 13, 2021) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). "'[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached ..., the exhibit prevails.'" *Id.* (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (alteration in original) (quoting *Fayetteville Inv'rs v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991))).

hours, and fringe benefits contribution." (Dkt. No. 1, ¶ 106.) This is insufficient. Speculative damages are not recoverable and cannot satisfy the ILA's burden of alleging damages, which are essential to its tortious interference claims. A plaintiff must allege more than "naked assertions" to establish elements of its *prima facie* case. *Twombly*, 550 U.S. at 557. The ILA has failed to allege necessary elements of its case*.*

The ILA also fails to plead its claim with specificity. When, as here, a plaintiff alleges interference with a prospective business contract or expectancy, the plaintiff must also plead "with reasonable specificity" the identified contract or expectancy, and "the plaintiff must [plead and] show with reasonable certainty that he would have realized the beneficial business expectancy absent the defendant's intentional misconduct."[6] Other than the Master Contract, for which the ILA has attempted to bring a tortious interference with contract claim, the ILA has not alleged any specific business expectancy that has been harmed by the VPA or McCoy's alleged actions.

> 2. *The ILA has failed to allege improper methods to support a tortious interference with business expectancy.*

For a tortious interference with business expectancy claim, the ILA "must allege and prove not only an intentional interference ..., but also that the defendant employed 'improper methods.'" *Dunlap v. Cottman Transmission Sys., LLC*, 287 Va. 207, 216 (2014) (internal quotations altered and internal citations omitted); *Id.* at n.5 (describing what constitutes "improper methods" as including "violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation

---

[6] *See, e.g., JPMCCM 2010-C1 Aquia Off. LLC v. Mosaic Aquia Owner, LLC*, 101 Va. Cir. 34 (Va. Cir. Ct. (Stafford Co.) 2019) (sustaining demurrer where the claimant failed to identify "a single concrete business contract that would have, with certainty, manifested from the 'numerous interested parties.'"); *French v. Garraghty*, 2006 WL 2022001, at *1 (Va. Cir. Ct. (City of Richmond) 2006) ("The claim for tortious interference with expectancy fails to delineate a specific existing expectancy capable of reasonably being realized."); *see Com. Bus. Sys., Inc. v. Halifax Corp.*, 253 Va. 292, 301, 484 S.E.2d 892, 897 (1997) ("[M]ere proof of a plaintiff's belief and hope that a business relationship will continue is inadequate to sustain the cause of action.")

or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship"). No such improper methods have been alleged here.

Further, "[c]ourts have held that an unstated element of tortious interference under Virginia law is 'a competitive relationship between the party interfered with and the interferor.'" *Lee Pappas Body Shop*, No. 3:20cv-964-HEH, 2021 WL 3609296, at *7 (quoting *17th Street Assocs., LLP v. Markel Int'l Ins. Co. Ltd.*, 373 F. Supp. 2d 584, 600 (E.D. Va. 2005)); *see also Wenzel v. Knight*, No. 3:14-cv-432, 2015 WL 3466863, at *8 (E.D. Va. June 1, 2015) (granting motion to dismiss on tortious interference claim because "Wenzel fails to allege any facts that the defendants under Count III were in competition with her"). Virginia case law on the requisite qualifying relationship shows that such relationships are between firms that directly vie with each other for business. *See 17th Street Assocs., LLP*, 373 F. Supp 2d at 600 (listing cases); *contra AdvanFort Co. v. Int'l Registries, Inc.*, No. 1:15-cv-220, 2015 WL 2238076, at *5 (E.D. Va. May 12, 2015) (finding no competitive relationship where the complaint described plaintiff's business as providing security for people, assets, and properties, but described the defendant as "a privately administered ship and corporate registration firm").

The ILA, however, is not in competition with the VPA or McCoy, and has not alleged facts in its Complaint that would establish a competitive relationship. The VPA is a political subdivision and McCoy is its CEO and Executive Director; as the Complaint alleges, that the Port of Virginia is in competition with other ports along the Eastern Seaboard and Gulf Coast. (Dkt. No. 1, ¶¶ 2–3, 15.) The ILA, in contrast, is an international labor union. (*Id.* ¶ 1.) It represents the labor interests of longshore workers. (*Id.*) These are not the sort of entities that Virginia courts have previously found to be competitors, as they do not compete for the same customers or business. Thus, for this reason as well, the ILA has not alleged—and cannot viably allege—

21

sufficient facts to state a claim for tortious interference with a business expectancy. Accordingly, Counts II and III of the Complaint should be dismissed with prejudice.

> 3. *Both of the ILA's state law claims require interpretation of the Master Contract, which is fatal.*

Counts II and III require dismissal because they require the Court to interpret the Master Contract. The Fourth Circuit has made clear that state law claims for tortious interference cannot survive against a non-signatory when they require interpretation of a collective bargaining agreement. *Covenant Coal Corp.*, 977 F.2d at 899 (affirming dismissal with prejudice of state law claims against non-signatory to a collective bargaining agreement "[b]ecause the Union's state cause of action would require a court to interpret the collective bargaining agreements between the Union and the mining companies to determine whether Covenant's actions had caused a breach of those agreements, the Union's state claim must be found to be preempted by section 301 of the LMRA.")

The fact that a plaintiff would otherwise have no remedy or recourse against the non-signatory does not change the conclusion. *Dill v. Mountain Valley Pipeline, LLC,* No. 2:21-CV-00384, 2022 WL 2111968, at *3 n.2 (S.D.W. Va. June 10, 2022) ("The lack of an alternative remedy, however, does not change the court's conclusion that a trier of fact would have to consider the terms of the CBA to determine whether MVP and/or EQT tortiously interfered with it."). As the Fourth Circuit noted in *Covenant Coal*, a plaintiff, like the ILA, could still sue the party for which it is in privity or bring a claim before the National Labor Relations Board. *Covenant Coal Corp.*, 977 F.2d at 899.

Counts II and III should be dismissed.

**D.  The ILA has not alleged the elements for a permanent injunction.**

Even with the benefit of the prior briefing, the ILA does not attempt to state a claim for a

22

permanent injunction. Count IV remains bare bones and lacking in specificity as it relates to what any such permanent injunction would look like and what facts would establish the ILA's entitlement to such relief.

"[A] plaintiff seeking a permanent injunction . . . must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). To state a claim, "[a] plaintiff must plausibly allege facts that, if proven, would be sufficient to establish *each element* of the claim." *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 269 (4th Cir. 2022) (emphasis added). Such factual allegations must be sufficient "'"enough to raise a right to relief above the speculative level,'" and the Court "need not accept as true 'legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement, . . . unwarranted inferences, unreasonable conclusions, or arguments.'" *Saphilom v. NewRez, LLC*, No. 3:24-cv-00008, 2024 WL 3394784, at *2 (W.D. Va., June 28, 2024) (quoting *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005); *Richardson v. Shapiro*, 751 F. App'x 346, 348 (4th Cir. 2018); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009)). Therefore, a plaintiff seeking a permanent injunction must allege "what—if any—irreparable harm she has suffered, why remedies available at law are inadequate, or why an injunction would be in the public interest[,]" or face dismissal. *Id.* at *2–4.

Here, the ILA has plainly not articulated the requisite factors to state a claim for a permanent injunction. Under *Saphilom*, the ILA's bare, conclusory allegations that it "will be immediately and irreparably harmed" and "has no adequate remedy at law" are insufficient to

23

survive a Motion to Dismiss. (*See* Dkt. No. 1, ¶¶ 116–117; *Saphilom*, No. 3:24-cv-00008, 2024 WL 3394784, at *2.) The ILA alleges that it needs court intervention because it has no contractual remedies against the VPA. (*See* Dkt. No. 1, ¶ 90.) This argument is unpersuasive. To the extent that this is an attempt to state a lack of an adequate remedy at law, it fails. The ILA continues to ignore its available contractual remedies and grievance procedures against VIT, which are not alleged to be exhausted. The claims against VPA and McCoy are not appropriate vehicles for the ILA to seek relief. At best, the claims are essentially contractual interference claims, which the Fourth Circuit has determined are improper against non-signatories to a collective bargaining agreement. *Covenant Coal Corp.*, 977 F.2d at 899–900. This lawsuit is not the mechanism for the ILA to obtain relief, through permanent injunction or otherwise.

Further, the ILA has not even attempted to allege that a remedy in equity is warranted when considering the balance of hardships between the parties or that the public interest would not be disserved by a permanent injunction. Nor does the ILA seek narrowly tailored relief in framing its requested injunction despite having the opportunity to effectively amend its Complaint. Having failed to allege a *prima facie* case, the request for injunctive relief must be denied.

III. <u>Under Rule 12(b)(1) and 12(b)(6), the ILA's claims are barred by sovereign immunity.</u>

Because dismissal is warranted on other grounds, this Court need not conduct the sovereign immunity analysis. Should the Court, however, decide to evaluate sovereign immunity, it should hold that both the VPA and McCoy are immune.[7]

---

[7] Judge Walker's opinion in the prior case did note that if he was going to rule based on sovereign immunity that he would like factual discovery on two issues: 1) whether the Commonwealth would be responsible for any judgment and 2) the degree of autonomy that VPA exercised. (Ex. 2, at 7, n. 3.) He did not, however, ultimately decide or rule on the issue. For the reasons stated herein, Defendants' position is that the sovereign immunity issue can be decided in Defendants' favor at this juncture should the Court not dismiss on other grounds.

The Eleventh Amendment of the United States Constitution states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." In addition to the state itself, "Eleventh Amendment Sovereign Immunity also applies to state agencies, agents, and instrumentalities that act as an arm of the state." *Kapoor v. Western State Hosp. Employee & Director*, No. 5:21-cv-00076, 2022 WL 4396279, at *3 (W.D. Va. Sept. 23, 2022) (citing *Regents of the Univ. of Calif. v. Doe*, 519 U.S. 425, 429–30 (1997)). Accordingly, under the doctrine of sovereign immunity, a state agency may not be sued under federal law in a federal court without the "unequivocally expressed" consent of the state, regardless of the nature of the relief sought. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 97–106 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. This jurisdictional bar applies regardless of the nature of the relief sought." (citations omitted)).

Courts have identified three main exceptions to state sovereign immunity. *See Kapoor*, 2022 WL 4396279, at *3. "First, Congress may expressly abrogate a state's sovereign immunity for certain types of cases via statute in the exercise of its power to enforce the Fourteenth Amendment— an amendment enacted after the Eleventh Amendment and specifically designed to alter the federal-state balance." *Id.* (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445, 448 (1976)). "Second, a state may waive its sovereign immunity by consenting to suit. *Id.* (citing *Clark v. Barnard*, 108 U.S. 436, 447–48 (1883)). "Finally, an exception recognized in *Ex parte Young*, 209 U.S. 123 (1908), allows private citizens, in proper cases, to seek injunctive relief against state officials in their official capacities to enjoin them from engaging in future conduct that would violate the Constitution or a federal statute." *Id.* (citing *Ex parte Young*, 209 U.S. at 159).

### A.  Sovereign immunity bars the claims against the VPA.

It is undisputed that VPA is a "public instrumentality of the Commonwealth of Virginia." (Dkt. No. 1, ¶¶ 2, 23, 96.)  As such, the VPA is entitled to sovereign immunity. The ILA cites no exception to the Eleventh Amendment nor can any of the exceptions be said to apply here.[8] *See Kapoor*, 2022 WL 4396279, at *3–4. The VPA has not consented to suit and there is no allegation that the ILA intends to bring this cause of action under any statutory scheme for which Congress has expressly abrogated the state's sovereign immunity. *See id.* Finally, the *Ex parte Young* exception applies to state officials only, and is therefore inapplicable to the VPA as a political subdivision. *Id.* at *3. Accordingly, without any applicable exception, the Eleventh Amendment bars the ILA's claims against the VPA, and the claims should be dismissed, with prejudice.

For all these reasons, the VPA is entitled to sovereign immunity.

### B.  The ILA fails to state a claim to overcome McCoy's sovereign immunity.

"[W]hen the State itself is named as the defendant, a suit against state officials that is in

---

[8] The ILA may attempt to rely upon the recent opinion of the Supreme Court of the United States in *Galette v. New Jersey Transit Corporation*. That case, however, is distinguishable in a way that supports Defendants' position. In *Galette*, the Court analyzed the sovereign immunity elements in the context of whether a public transit authority was an arm of the state such that it could not be sued in another state without its consent. 607 U.S. 509 (2026). Although the Court ultimately held that New Jersey Transit ("NJT") was not entitled to sovereign immunity, the decision was based on factors distinct from those present in this case. Specifically, the Court held that NJT (which, unlike the VPA, was a corporation "independent" of supervision of any "body or officer") was not an arm of the state and therefore not entitled to the state's immunity largely because of the nature of its formation and the fact that it paid its own judgments. *Id.* at 516, 523-27.

Unlike in *Galette*, the VPA is a political subdivision of the Commonwealth, not a corporation, and although the ILA does not seek any monetary judgment here, the Commonwealth's resources will be affected nonetheless. (*See* Dkt. No. 1, at 23–24, ¶¶ A-E). Although the Commonwealth is not involved in the bargaining at issue in the ILA's Complaint, the Commonwealth of Virginia devoted substantial funds to the purchase of the RMGs. A ruling of this Court would therefore have a direct effect on the Commonwealth's investment.

26

fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." *Pennhurst State Sch. & Hosp.*, 465 U.S. at 101-02. *Ex parte Young* is an exception to the immunity of state officials, but it is only applicable when the official has a connection to enforcement of the act and the requested relief is prospective. (*See infra* § I(2)(a)–(b).) To the extent that the ILA is somehow intending to invoke the *Ex parte Young* doctrine for its claims against McCoy (which Defendants do not concede that it does), its claims fail on both fronts.

1.  *The Complaint does not allege a connection between McCoy and enforcement.*

The *Ex parte Young* exception to sovereign immunity of state actors also requires that the individual being sued in their official capacity have "some connection with the enforcement of the act." *Nansemond Indian Nation v. Virginia*, No. 2:25-cv-195, 2025 WL 2320358, at *5 (E.D. Va. Aug. 8, 2025) (quoting *Doyle v. Hogan*, 1 F.4th 249, 254 (4th Cir. 2021) (internal quotation marks omitted); *Ex parte Young*, 209 U.S. 123, 157 (1908)). This requires that there be a "'special relation' between the state officer sued and the challenged" action "which provides the officer with the authority to enforce the particular law at issue." *Id.* (quoting *Doyle*, 1 F.4th at 254; *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001)). "'Without this enforcement duty, the officer is merely "a representative of the State" who cannot be sued because allowing such a suit would essentially "make the State a party."'" *Id.* (quoting *Doyle*, 1 F.4th at 254; *Ex parte Young*, 209 U.S. at 157); *see also Perry-Bey v. Virginia*, No. 3:12cv704, 2013 WL 2476491, at *6 (E.D. Va. June 7, 2013) (quoting *Ex parte Young*, 209 U.S. at 157) ("However, the state 'officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party.'"). Notably, this Court has acknowledged recently that an allegation that an individual that "has general supervisory authority over [a state] agency merely by virtue of being [a state actor], is

insufficient." *Nansemond*, No. 2:25-cv-195, 2025 WL 2320358, at \*6.

This special relation analysis is applicable to the facts pled in this case. The ILA attempts to lump claims against the VPA and McCoy together, in an apparent attempt to circumvent sovereign immunity. In doing so, the ILA does not allege a special relationship on the part of McCoy beyond those acts apparently being taken by the VPA itself. Instead, the ILA continues to mention positions allegedly taken by the VPA's prior CEO and Executive Director, Stephen Edwards, even though the ILA claims that Edwards's alleged efforts were futile. (*See* Dkt. No. 1, ¶¶ 49, 53–54 (alleging that "despite Defendants' arguments throughout negotiations," the Master Contract was entered "with increased workflow protections against the proliferation of job-reducing technology")). The ILA otherwise simply references McCoy as the current CEO and Executive Director for the VPA (*Id.* ¶ 3), which is at best "supervisory authority" akin to the situation in *Nansemond*.

The ILA does not bring any claims specific to McCoy herself. There are no allegations in the Complaint related to McCoy and/or her alleged conduct at all. Accordingly, McCoy is entitled to sovereign immunity protection, and the claims against her should be dismissed pursuant to Rule 12(b)(6).

    2.   *The relief sought by the ILA is not prospective.*

Even if the ILA had sufficiently alleged McCoy's connection to enforcement—which it has not—much of the relief sought by the ILA is not prospective injunctive relief. "Under *Ex Parte Young*, sovereign immunity under the Eleventh Amendment does not extend to suits against state officials seeking prospective injunctive or declaratory relief designed to correct an ongoing violation of federal law." *Parikh v. Brown*, No. 23-1111, 2024 WL 2764720, at \*1 (4th Cir. May 30, 2024) (citing *Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275, 292 (4th Cir. 2021)); *see also*

28

*Satkowiak v. Marshall*, 771 F. Supp. 3d 937, 945 (E.D. Mich. 2025) (quoting *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 636 (2002) ("'In determining whether the *Ex parte Young* doctrine avoids an Eleventh Amendment bar to suit, a court need only conduct a "straightforward inquiry" into whether the complaint alleges an *ongoing violation* of federal law and seeks relief properly characterized as *prospective*.'") (emphasis in original). The exception does not apply, however, "'when the alleged violation of federal law occurred entirely in the past.'" *Parikh*, No. 23-1111, 2024 WL 2764720, at *1 (quoting *Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 747 (4th Cir. 2018)). Failure to allege an "ongoing violation of federal law" is fatal to a plaintiff's attempted invocation of the *Ex parte Young* exception to Eleventh Amendment sovereign immunity because "a plaintiff must allege a sufficiently 'imminent and particularized' threat that the state-official defendants will enforce the challenged state policy or statute against Plaintiffs in the future." *Satkowiak*, 771 F. Supp. 3d at 946. Claims for retroactive relief remain barred by the Eleventh Amendment. *Pennhurst State Sch. & Hosp.*, 465 U.S. at 102–03.

The ILA seeks to address something that has allegedly already happened, *i.e.*, the alleged purchase of new equipment with alleged "new technology." (Dkt. No. 1 ¶ 77.) The ILA further seeks a declaration that "Defendants' attempt to frustrate and to interfere with the collective bargaining process and administration of the Master Contract is preempted by federal labor law." (*Id.* at 12 ¶ B.) This request is therefore not prospective but rather seeks a declaration that the alleged past act of Defendants is preempted. The ILA's general request for an injunction to prohibit the VPA and McCoy from interfering with grievance and dispute resolution procedures in the Master Contract contains neither the requisite specificity nor the actual expectancy required to overcome McCoy's sovereign immunity. Put simply, the ILA's lawsuit complains about purchase

29

of equipment that has already happened.

VPA and McCoy are both protected by sovereign immunity against the claims raised by the ILA, so the claims against them should be dismissed with prejudice in their entirety pursuant to Rules 12(b)(1) and 12(b)(6).

### CONCLUSION

For a second time, the ILA improperly seeks to bring its labor negotiations with VIT before this Court, dragging along parties that are not even subject to the Master Contract. Despite effectively having leave to amend in the event of changed circumstances, the ILA has squandered its second bite at the apple and failed to fix the deficiencies of its original Complaint. The Court lacks subject matter jurisdiction to hear the case, no claim has been stated against VPA or McCoy, and dismissal with prejudice is appropriate. Pursuant to Rules 12(b)(1) and 12(b)(6), Defendants Virginia Port Authority and Sarah McCoy respectfully request this Court enter an order dismissing the Complaint with prejudice and provide for any other such further relief as may be required by justice.

Dated: July 2, 2026

Respectfully submitted,

VIRGINIA PORT AUTHORITY AND
SARAH MCCOY

*/s/ Jennifer L. Eaton*
Jennifer L. Eaton (VSB No. 87491)
Katherine M. Lennon Ellis (VSB No. 92358)
WOODS ROGERS VANDEVENTER BLACK PLC
101 W. Main Street, Suite 500
Norfolk, VA 23510
Telephone:  (757) 446-8600
Facsimile:  (757) 446-8670
jennifer.eaton@woodsrogers.com
kate.lennon@woodsrogers.com

Janet W. Baugh (VSB No. 44649)
Christian A. Parrish (VSB No. 44427)
Senior Assistant Attorneys General
Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
Telephone:  (804) 786-4596
Facsimile:  (804) 786-1991
jbaugh@oag.state.va.us
cparrish@oag.state.va.us

*Counsel for Defendants Virginia Port Authority
and Sarah McCoy*

31